IN THE SUPREME COURT OF NORTH CAROLINA

No. 514PA11-2

Filed 11 May 2018

STATE OF NORTH CAROLINA

v.

HARRY SHAROD JAMES


On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 786 S.E.2d 73 (2016), reversing an order entered on 12 December 2014 by Judge Robert F. Johnson in Superior Court, Mecklenburg County, and remanding for additional proceedings. On 16 March 2017, the Supreme Court allowed the State's conditional petition for discretionary review concerning an additional issue. Heard in the Supreme Court on 11 December 2017.

*Joshua H. Stein, Attorney General, by Sandra Wallace-Smith, Special Deputy Attorney General, and Robert C. Montgomery, Senior Deputy Attorney General, for the State-appellant-appellee.*

*Glenn Gerding, Appellate Defender, by David W. Andrews, Assistant Appellate Defender, for defendant-appellant-appellee.*

*Juvenile Law Center, by Marsha L. Levick, pro hac vice, and Office of the Juvenile Defender, by Eric J. Zogry, for Juvenile Law Center, Campaign for Fair Sentencing of Youth, and Juvenile Sentencing Project, amici curiae.*

*Mark Dorosin, Elizabeth Haddix, Jennifer Watson Marsh, Brent Ducharme, and Allen Buansi for Senators Angela Bryant and Erica Smith-Ingram, Representatives Kelly Alexander, Larry Bell, Jean Farmer-Butterfield, Rosa Gill, George Graham, Mickey Michaux, Amos Quick III, Evelyn Terry, and Shelly Willingham, and Professor Theodore M. Shaw; and Youth Justice Project of the Southern Coalition for Social Justice, by K. Ricky Watson, Jr. and Peggy Nicholson, for Great Expectations, amici curiae.*

ERVIN, Justice.

This case involves the validity of the procedures prescribed in N.C.G.S. §§ 15A-1340.19A to 15A-1340.19D for the sentencing of juveniles convicted of first-degree murder in light of *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), and its progeny and other constitutional provisions. On 19 June 2006, the Mecklenburg County grand jury returned bills of indictment charging defendant with robbery with a dangerous weapon and first-degree murder on the basis of incidents that occurred on 12 May 2006, when defendant was sixteen years old. On 10 June 2010, a jury returned verdicts convicting defendant of robbery with a dangerous weapon and first-degree murder on the basis of both malice, premeditation and deliberation and the felony murder rule. In light of the jury's verdict, the trial court entered judgments sentencing defendant to a term of sixty-four to eighty-six months imprisonment based upon his conviction for robbery with a dangerous weapon and to a concurrent term of life imprisonment without the possibility of parole, a sentence that was, at that time, mandatory for juvenile defendants convicted of first-degree murder. *See* N.C.G.S. 14-17 (2009) (providing that "any person who commits [murder in the first degree] shall be punished with death or imprisonment in the State's prison for life without parole as the court shall determine pursuant to [N.C.]G.S. [§] 15A-2000, except that any such person who was under 18 years of age at the time of the murder shall be punished with imprisonment in the State's prison for life without

parole"). Defendant noted an appeal to the Court of Appeals, which filed an opinion on 18 October 2011 finding no error in the proceedings that led to the entry of the trial court's judgments. *State v. James*, 216 N.C. App. 417, 716 S.E.2d 876, 2011 WL 4917045 (2011) (unpublished).

On 22 November 2011, defendant filed a petition seeking discretionary review of the Court of Appeals' decision by this Court. During the pendency of defendant's discretionary review petition, the United States Supreme Court held in *Miller* that mandatory sentences of life imprisonment without the possibility of parole for juveniles convicted of committing criminal homicides violated the Eighth Amendment's prohibition against cruel and unusual punishments and mandated that sentencing judges consider such offenders' "youth and attendant characteristics" before imposing "the harshest possible penalty" for juveniles. *Miller*, 567 U.S. at 479, 483, 489, 132 S. Ct. at 2469, 2471, 2475, 183 L. Ed. 2d at 424, 426, 430. On 25 June 2012, the day upon which *Miller* was decided, defendant sought leave to amend his discretionary review petition for the purpose of bringing *Miller* to our attention. On 12 July 2012, the Governor signed legislation "to amend the state sentencing laws to comply with the United States Supreme Court decision in *Miller v. Alabama*," (all capital and no italicized letters in the original), providing that defendants convicted of first-degree murder for an offense committed when they were under the age of eighteen "shall be sentenced in accordance with this Article," with this legislation being applicable to any resentencing hearings held for juveniles "sentenced to life

imprisonment without parole prior to the effective date of this act." Act of July 3, 2012, ch. 148, secs. 1, 3, 2011 N.C. Sess. Laws (Reg. Sess. 2012) 713, 713-14. On 23 August 2012, this Court entered an order allowing defendant's discretionary review petition "for the limited purpose of remanding to the Court of Appeals for further remand to the trial court for resentencing pursuant to Article 93 of Chapter 15A of the General Statutes of North Carolina." [1]

The case in which defendant had been convicted of first-degree murder came on for resentencing before the trial court at the 5 December 2014 criminal session of the Superior Court, Mecklenburg County. On 12 December 2014, the trial court entered an order determining, among other things, that:

> The Court [ ] has considered the age of the [d]efendant at the time of the murder, his level of maturity or immaturity, his ability to appreciate the risks and consequences of his conduct, his intellectual capacity, his one prior record of juvenile misconduct (which this Court discounts and does not consider to be pivotal against the [d]efendant, but only helpful as to the light the juvenile investigation sheds upon [d]efendant's unstable home environment), his mental health, any family or peer pressure exerted upon defendant, the likelihood that he would benefit from rehabilitation in confinement, the evidence offered by [d]efendant's witnesses as to brain development in juveniles and adolescents, and all of the probative evidence offered by both parties as well as the record in this case. The Court has considered [d]efendant's statement to the police and his contention that it was his co-defendant Adrian Morene who planned and directed the commission of the crimes against Mr. Jenkins, [and] the Court does

---

[1] Although the new legislation was originally intended to be codified in Article 93 of Chapter 15A of the North Carolina General Statutes, it was actually codified in Article 81B of Chapter 15A at Part 2A, sections 15A-1340.19A, -1340.19B, -1340.19C, and -1340.19D.

> note that in some of the details and contentions the statement is self-serving and contradicted by physical evidence in the case. In the exercise of its informed discretion, the Court determines that based upon all the circumstances of the offense and the particular circumstances of the [d]efendant that the mitigating factors found above, taken either individually or collectively, are insufficient to warrant imposition of a sentence of less than life without parole.

As a result, the trial court ordered that "[d]efendant be imprisoned to Life Imprisonment without Parole." Defendant noted an appeal to the Court of Appeals from the trial court's resentencing judgment.

In seeking relief from the trial court's resentencing judgment before the Court of Appeals, defendant argued that the trial court had, by resentencing him pursuant to N.C.G.S. §§ 15A-1340.19A to 15A-1340.19D (the Act), violated the state and federal constitutional prohibition against the enactment of ex post facto laws, that the relevant statutory provisions subjected him to cruel and unusual punishment and deprived him of his rights to a trial by jury and to not be deprived of liberty without due process of law, and that "the trial court failed to make adequate findings of fact to support its decision to impose a sentence of life without parole." *State v. James*, ___ N.C. App. ___, ___, 786 S.E.2d 73, 77-79, 82 (2016). In a unanimous opinion filed on 3 May 2016, the Court of Appeals upheld the constitutionality of the Act while reversing the trial court's resentencing order and remanding it for further proceedings. For the reasons stated below, we modify and affirm the decision of the

Court of Appeals and remand this case for further proceedings not inconsistent with this opinion.

In its opinion, the Court of Appeals began by rejecting defendant's ex post facto argument and his contention that he "should have been resentenced 'consistent with sentencing alternatives available as of the date of the commission of the offense[,]' specifically, 'within the range for the lesser-included offense of second-degree murder.'" *Id.* at \_\_\_, 786 S.E.2d at 77-78 (alteration in original). In reaching this result, the Court of Appeals noted that the relevant statutory provision "does not impose a different or greater punishment than was permitted when the crime was committed; nor d[id] it disadvantage defendant in any way." *Id.* at \_\_\_, 786 S.E.2d at 78. On the contrary, the new legislation merely afforded the trial court the option of imposing a lesser sentence than had been available at the time that judgment was originally entered against defendant. *Id.* at \_\_\_, 786 S.E.2d at 78. In addition, the Court of Appeals noted that "there is no indication that the legislatures in [the] states [in which juvenile defendants had been resentenced based upon convictions for lesser offenses in the aftermath of *Miller*] enacted new sentencing guidelines . . . after the mandatory sentences provided in their respective statutes were determined [to be] unconstitutional." *Id.* at \_\_\_, 786 S.E.2d at 78 (first citing *State v. Roberts*, 340 So. 2d 263 (La. 1976); then citing *Jackson v. Norris*, 2013 Ark. 175, 426 S.W.3d 906 (2013); and then citing *Commonwealth v. Brown*, 466 Mass. 676, 1 N.E.3d 259 (2013)). In this state, however, the General Assembly "acted quickly in response to *Miller* and

passed the Act, establishing new sentencing guidelines in N.C.[G.S.] § 15A-1340.19A *et seq.* for juveniles convicted of first-degree murder" and making it "clear that [the statute] was to apply retroactively." *Id.* at ___, 786 S.E.2d at 78. As a result, the Court of Appeals concluded that "there is no violation of the constitutional prohibitions on *ex post facto* laws" in this instance. *Id.* at ___, 786 S.E.2d at 79.

Secondly, the Court of Appeals rejected defendant's contention that the presence of "instead of," the inclusion of mitigating factors, and the absence of aggravating factors in N.C.G.S. § 15A-1340.19C(a) indicated that the General Assembly "presumptively favor[ed] a sentence of life without parole for juveniles convicted of first-degree murder" and created a "risk of disproportionate punishment" indistinguishable from that deemed impermissible in *Miller*. *Id.* at ___, 786 S.E.2d at 79. In reaching this conclusion, the Court of Appeals noted that, "to the extent that starting the sentencing analysis with life without parole creates a presumption, we agree with defendant there is a presumption" in N.C.G.S. § 15A-1340.19C. *Id.* at ___, 786 S.E.2d at 79. Although the use of "instead of" did not, standing alone, create any presumption in favor of a sentence of life imprisonment without the possibility of parole, the use of "instead of" in combination with the statutory requirement that sentencing courts consider mitigating factors and the absence of a requirement that sentencing courts consider aggravating factors in making sentencing decisions did indicate that the General Assembly intended for a sentence of life without the possibility of parole to be deemed presumptively correct. *Id.* at ___, 786 S.E.2d at 79

(stating that "the reason for the General Assembly's use of 'instead of' in N.C.[G.S.] § 15A-1340.19C(a), as opposed to 'or,' becomes clear" under those circumstances). As a result, "[b]ecause the statutes only provide for mitigation from life without parole to life with parole and not the other way around," the Court of Appeals determined that "the General Assembly has designated life without parole as the default sentence, or the starting point for the court's sentencing analysis." *Id.* at ___, 786 S.E.2d at 79.

The Court of Appeals did not, however, accept defendant's contention that the existence of such a presumption in favor of a sentence of life imprisonment without the possibility of parole renders the statutory sentencing scheme unconstitutional. In view of the fact that the relevant statutory provisions were enacted in order to "allow the youth of a defendant and its attendant characteristics to be considered in determining whether a lesser sentence than life without parole is warranted," the Court of Appeals opined that "it seems commonsense that the sentencing guidelines would begin with life without parole, the sentence provided for adults in N.C.[G.S.] § 14-17 that the new guidelines were designed to deviate from." *Id.* at ___, 786 S.E.2d at 80. Moreover, given that "nothing in N.C.[G.S.] § 15A-1340.19A *et seq.* conflicts with the [United States Supreme] Court's belief that sentences of life without parole for juvenile defendants will be uncommon . . . . [w]ith proper application of the sentencing guidelines in light of *Miller*, it may very well be the uncommon case that a juvenile is sentenced to life without parole under [the statute]." *Id.* at ___, 786 S.E.2d at 80. As a result, the Court of Appeals held that it would not be

"unconstitutional [ ] for the sentencing analysis in N.C.[G.S.] § 15A-1340.19A *et seq.* to begin with a sentence of life without parole." *Id.* at ___, 786 S.E.2d at 80.

Thirdly, the Court of Appeals rejected defendant's contention that the failure of the Act to "provide for the consideration of aggravating factors," renders the statute "unconstitutionally vague and will lead to arbitrary sentencing decisions" so as to deprive defendant of liberty without due process of law. *Id.* at ___, 786 S.E.2d at 80-81 (citing N.C.G.S. §§ 15A-1340.16, -2000 (2015)). In light of "the presumption that the statute is constitutional" and the fact that statutory provisions are "strictly construe[d]" so as to "allow[ ] the intent of the legislature to control," the Court of Appeals concluded that the relevant statutory provisions, "viewed . . . through the lens of *Miller*," are "not unconstitutionally vague and will not lead to arbitrary sentencing decisions" given that "[t]he discretion of the sentencing court is guided by *Miller* and the mitigating factors provided in N.C.[G.S.] § 15A-1340.19B(c)." *Id.* at ___, 786 S.E.2d at 81-82 (citations omitted). Similarly, the Court of Appeals rejected defendant's argument that the relevant statutory provisions violate a defendant's right to a trial by jury given the absence of any provision requiring the State to prove, and a jury to find, beyond a reasonable doubt, the existence of any aggravating factors as a prerequisite for the imposition of a sentence of life imprisonment without the possibility of parole in the relevant statutory language. *Id.* at ___, 786 S.E.2d at 82.

Finally, the Court of Appeals agreed with defendant's assertion that the trial court had "failed to make adequate findings of fact to support its decision to impose a

sentence of life without parole." *Id.* at ___, 786 S.E.2d at 82. According to the Court of Appeals, the trial court's order "simply lists the trial court's considerations and final determination" without identifying "which considerations are mitigating and which are not." *Id.* at ___, 786 S.E.2d at 84. In other words, the trial court made "inadequate findings as to the presence or absence of mitigating factors to support its determination," thereby "abus[ing] its discretion in sentencing defendant to life without parole." *Id.* at ___, 786 S.E.2d at 84. As a result, the Court of Appeals reversed the trial court's judgment and remanded this case to the Superior Court, Mecklenburg County for further sentencing proceedings.

In seeking further review of the Court of Appeals' decision by this Court, defendant argued that, "[b]y upholding a presumption in favor of life without parole, the Court of Appeals issued a decision that violates *Miller* and would lead to life without parole sentences for juveniles who are not among the worst offenders," contrary to the United States Supreme Court's determination that a sentence of life imprisonment without the possibility of parole would be "excessive for all but 'the rare juvenile offender whose crime reflects irreparable corruption,'" quoting *Montgomery v. Louisiana*, ___ U.S. ___, ___, 136 S. Ct. 718, 734, 193 L. Ed. 2d 599, 619 (2016) (quoting *Miller*, 567 U.S. at 480-81, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424)). In addition, defendant asserted that "the Court of Appeals erroneously concluded that the sentencing procedures outlined in [the Act] provide sufficient guidance to trial courts," "erroneously upheld a sentencing scheme that could only

lead to arbitrary sentencing decisions," and erroneously rejected defendant's ex post facto claim. The State, on the other hand, urged us to refrain from granting further review in this case given that the Court of Appeals had "correctly determined N.C.[G.S.] § 15A-1340.19A *et seq.* did not create an unconstitutional presumption in favor of life without parole," was not unconstitutionally vague or arbitrary, and did not constitute an impermissible ex post facto law. In the event that we decided to grant defendant's discretionary review petition, the State sought further review of the Court of Appeals' determination that the relevant statutory provisions created a presumption in favor of a sentence of life imprisonment without the possibility of parole. We granted defendant's discretionary review petition and the State's conditional discretionary review petition on 16 March 2017.

In his challenge to the validity of its decision, defendant contends that the Court of Appeals erred by holding that a statute establishing a presumption in favor of the imposition of a sentence of life imprisonment without the possibility of parole upon a juvenile convicted of first-degree murder does not subject the juvenile to impermissibly cruel and unusual punishment. In view of the fact that we are unable to appropriately consider this contention without first addressing the State's challenge to the validity of the Court of Appeals' determination that the relevant statutory provisions embody such a presumption, we will begin our analysis by addressing the State's contention that N.C.G.S. § 15A-1340.19C does not "give[ ] rise to a mandatory presumption" that a juvenile convicted of first-degree murder on the

basis of a theory other than the felony murder rule should be sentenced to life imprisonment without the possibility of parole.

In seeking to persuade us that the Court of Appeals had misconstrued N.C.G.S. §§ 15A-1340.19A to 15A-1340.19D, the State contends that, rather than being "interpreted in isolation," the words in which a statute is couched should be read in "context and with a view to their place in the overall statutory scheme," quoting *Sturgeon v. Frost*, ___ U.S. ___, ___, 136 S. Ct. 1061, 1070, 194 L. Ed. 2d 108, 121 (2016). According to the State, the legislative intent underlying the relevant statutory language "must be found from the language of the act, its legislative history and the circumstances surrounding its adoption which throw light upon the evil sought to be remedied," quoting *State v. Oliver*, 343 N.C. 202, 212, 470 S.E.2d 16, 22 (1996) (emphasis added). In view of the fact that the General Assembly enacted N.C.G.S. §§ 15A-1340.19A to 15A-1340.19D "to amend the state sentencing laws to comply with the United State Supreme Court decision in *Miller v. Alabama*," Ch. 148, 2011 N.C. Sess. Laws (Reg. Sess. 2012) at 713 (effective 12 July 2012), the State contends that "any interpretation of the statute must hold that point paramount." As a result of the fact that *"Miller* certainly didn't create a presumption in favor of [life imprisonment without the possibility of parole] but rather one of [life imprisonment with parole] that can only be changed with the requisite hearing," "to juxtapose a sentencing presumption of [life imprisonment without the possibility of parole] on every juvenile convicted of murder . . . would be injurious to *Miller*'s intent, and

counter to the General Assembly's articulated intent to enforce *Miller*."[2]  For that reason, the State contends that "[i]t is inconceivable that the General Assembly would enact legislation intended to comport with the mandates of *Miller*, which by its very terms offends them."  Since "courts presume that the General Assembly would not contradict itself in the same statute," citing *Brown v. Brown*, 353 N.C. 220, 226, 539 S.E.2d 621, 625 (2000), the State asserts that N.C.G.S. § 1340.19(B)(a)(2) "plainly cast[s] the sentencing choice between [life imprisonment without the possibility of parole] and [life imprisonment with parole] in the disjunctive."

In arguing that the Court of Appeals "correctly understood how [the Act] operated," defendant asserts that "[t]he two sentencing options available under the sentencing scheme are not equal alternatives" because, "[b]y using the phrase 'instead of,' " rather than requiring a trial court to choose "between" the sentencing options, "the General Assembly created a procedure in which the sentencing court's decision to impose life with parole is dependent upon the court first rejecting life without parole."  In view of the fact that the relevant statutory language only refers to "mitigating factors," which "are used by defendants to show that the case 'warrant[s] a less severe sentence,' " quoting *State v. Norris,* 360 N.C. 507, 512, 630

---

[2] In its appellee's brief before this Court, the State argues that "[t]he court's sentencing decision [pursuant to N.C.G.S. § 15A-1340.19C(a)] is binary, life with parole or life without parole"; however, "if the courts were to assume such a presumption *Miller*, as is reinforced by *Montgomery*, would necessitate that such a presumption would favor life without parole," on the grounds that the juvenile "must show that he fits in that protected status" of "juvenile offenders whose crimes reflect the transient immaturity of youth."  (Quoting *Montgomery* at ___ U.S. at ___,  136 S. Ct. at 724, 193 L. Ed. 2d at 609).

S.E.2d 915, 918, *cert. denied*, 549 U.S. 1064, 127 S. Ct. 689, 166 L. Ed. 2d 535 (2006), and fails to compel a court "to justify a sentence of life without parole by finding any aggravating factors," defendant contends that "the General Assembly created a scheme in which the sole decision is whether to push the sentence down from the default sentence of life without parole to the lesser sentence of life with parole."

In addition, defendant argues that legislative intent "cannot salvage an otherwise unconstitutional statute," with it being "the duty of the courts to give effect to the words actually used in a statute" without "delet[ing] words used or [ ] insert[ing] words not used." *State v. Watterson*, 198 N.C. App. 500, 505, 679 S.E.2d 897, 900 (2009). "The intent of the legislature . . . is to be found not in what the legislature meant to say, but in the meaning of what it did say." *Burnham v. Adm'r, Unemployment Comp. Act*, 184 Conn. 317, 325, 439 A.2d 1008, 1012 (1981). Thus, defendant contends, even though "the General Assembly intended to comply with *Miller*, it nevertheless created a sentencing scheme with a presumption in favor of life without parole" in violation of *Miller*'s requirement that "courts only impose sentences of life without parole for the 'rare' juvenile who exhibits 'irreparable corruption.' " Even if this Court were to examine the legislative intent, that intent "was undoubtedly influenced by its understanding of *Miller* when the opinion in *Miller* was first issued." Defendant contends that, in view of the fact that *Miller* was construed as largely procedural until *Montgomery* was decided, "our General Assembly enacted the new sentencing scheme before the full scope of *Miller* was

widely understood and without the deliberation necessary to properly implement a transformative constitutional rule."

"Legislative intent controls the meaning of a statute." *Midrex Techs., Inc. v. N.C. Dep't of Revenue*, 369 N.C. 250, 258, 794 S.E.2d 785, 792 (2016) (quoting *Brown v. Flowe*, 349 N.C. 520, 522, 507 S.E.2d 894, 895 (1998)).

> The intent of the General Assembly may be found first from the plain language of the statute, then from the legislative history, "the spirit of the act and what the act seeks to accomplish." If the language of a statute is clear, the court must implement the statute according to the plain meaning of its terms so long as it is reasonable to do so.

*Id.* at 258, 794 S.E.2d at 792 (quoting *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (internal citation omitted). "Although the title given to a particular statutory provision is not controlling, it does shed some light on the legislative intent underlying the enactment of that provision." *State v. Fletcher*, ___ N.C. ___, ___, 807 S.E.2d 528, 539 (2017) (citing *Brown v. Brown*, 353 N.C. at 224, 539 S.E.2d at 623). "[E]ven when the language of a statute is plain, 'the title of an act should be considered in ascertaining the intent of the legislature.' " *Ray v. N.C. Dep't of Transp.*, 366 N.C. 1, 8, 727 S.E.2d 675, 681 (2012) (quoting *Smith Chapel Baptist Church v. City of Durham*, 350 N.C. 805, 812, 517 S.E.2d 874, 879 (1999) (citing *State ex rel. Cobey v. Simpson*, 333 N.C. 81, 90, 423 S.E.2d 759, 764 (1992))). Finally, "a statute enacted by the General Assembly is presumed to be constitutional," *Wayne Cty. Citizens Ass'n v. Wayne Cty. Bd. of Commr's*, 328 N.C. 24,

29, 399 S.E.2d 311, 314-15 (1991) (citation omitted), and "will not be declared unconstitutional unless this conclusion is so clear that no reasonable doubt can arise, or the statute cannot be upheld on any reasonable ground," *id.* at 29, 399 S.E.2d at 315 (citing, *inter alia, Poor Richard's, Inc. v. Stone*, 322 N.C. 61, 63, 366 S.E.2d 697, 698 (1988)). "Where a statute is susceptible of two interpretations, one of which is constitutional and the other not, the courts will adopt the former and reject the latter." *Id.*at 29, 399 S.E.2d at 315 (citing *Rhodes v. City of Asheville*, 230 N.C. 759, 53 S.E.2d 313 (1949)).

The first section of Part 2A of Article 81B of Chapter 15A of the North Carolina General Statutes is N.C.G.S. § 15A-1340.19A, which is entitled "Applicability" and provides that "a defendant who is convicted of first degree murder, and who was under the age of 18 at the time of the offense, shall be sentenced in accordance with this Part." N.C.G.S. § 15A-1340.19A (2017). N.C.G.S. § 15A-1340.19B, which is entitled "Penalty determination," requires that juveniles convicted of first-degree murder be sentenced to life imprisonment with parole "[i]f the sole basis for conviction . . . was the felony murder rule." *Id.* § 15A-1340.19B(a)(1) (2017). In all other cases, "the court shall conduct a hearing to determine whether the defendant should be sentenced to life imprisonment without parole, as set forth in [N.C.]G.S. [§] 14-17, or a lesser sentence of life imprisonment with parole." *Id.* § 15A-1340.19B(a)(2) (2017). At the "penalty determination" hearing, "[t]he defendant or the defendant's counsel

may submit mitigating circumstances to the court, including, but not limited to, the

following factors:

> (1)    Age at the time of the offense.
> (2)    Immaturity.
> (3)    Ability to appreciate the risks and consequences of the conduct.
> (4)    Intellectual capacity.
> (5)    Prior record.
> (6)    Mental health.
> (7)    Familial or peer pressure exerted upon the defendant.
> (8)    Likelihood that the defendant would benefit from rehabilitation in confinement.
> (9)    Any other mitigating factor or circumstance.

*Id.* § 15A-1340.19B(c) (2017). In addition, N.C.G.S. § 15A-1340.19B provides that

"[t]he State and the defendant or the defendant's counsel shall be permitted to

present argument for or against the sentence of life imprisonment with parole," with

the defendant or the defendant's counsel having "the right to the last argument."

Finally, N.C.G.S. § 15A-1340.19C, entitled "Sentencing; assignment for

resentencing," provides that:

> The court shall consider any mitigating factors in determining whether, based upon all the circumstances of the offense and the particular circumstances of the defendant, the defendant should be sentenced to life imprisonment with parole instead of life imprisonment without parole. The order adjudging the sentence shall include findings on the absence or presence of any mitigating factors and such other findings as the court deems appropriate to include in the order.

*Id.* § 15A-1340.19C(a)(2017).[3]

After carefully examining the relevant statutory language, we are unable to conclude that the language in question, when read contextually and in its entirety, unambiguously creates a presumption that juveniles convicted of first-degree murder on the basis of a theory other than the felony murder rule should be sentenced to life imprisonment without the possibility of parole rather than life imprisonment with parole. On the contrary, when read in context, we are inclined to believe that the relevant statutory language treats life imprisonment without the possibility of parole and life imprisonment with parole as alternative sentencing options, with the selection between these two options to be made on the basis of an analysis of all of the relevant facts and circumstances in light of the substantive standard enunciated in *Miller*. *See* 567 U.S. at 479-80, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424 (stating that the sentence of life imprisonment without the possibility of parole should be reserved for "the rare juvenile offender whose crime reflects irreparable corruption" and should not be imposed upon "the juvenile offender whose crime reflects unfortunate yet transient immaturity" (quoting *Roper v. Simmons*, 543 U.S. 551, 573, 125 S. Ct. 1183, 1197, 161 L. Ed. 2d 1, 24 (2005))). In reaching this conclusion, we note that N.C.G.S. § 15A-1340.19B(a)(2), which describes the issue before the

---

[3] The remainder of N.C.G.S. § 15A-1340.19C, which governs motions for appropriate relief seeking resentencing, and N.C.G.S. § 15A-1340.19D, which enunciates the circumstances under which a juvenile sentenced to life imprisonment with the possibility of parole for first-degree murder is eligible for parole pursuant to N.C.G.S. § 15A-1340.19B(a)(1), have no relevance to the issues before the Court in this case.

sentencing court as "whether the defendant should be sentenced to life imprisonment without parole . . . or a lesser sentence of life imprisonment with parole," does not expressly state or even appear to assume that, all else being equal, any particular sentence is presumptively deemed to be appropriate in any particular case. Similarly, the fact that N.C.G.S. § 15A-1340.19B(b) allows the parties to present evidence concerning "any matter that the court deems relevant to sentencing," including evidence relating to the mitigating factors listed in N.C.G.S. § 15A-1340.19B(c), suggests that a number of factors, including, but not limited to, the statutorily enumerated mitigating factors, must be considered in making the required sentencing determination and that the sentencing court is required to consider the totality of the circumstances in determining whether the defendant should be sentenced to life imprisonment with or without the possibility of parole without relying upon a presumption that either sentence is appropriate in any particular instance. Finally, the fact that N.C.G.S. § 15A-1340.19C requires the sentencing court to determine, after considering "all the circumstances of the offense," "the particular circumstances of the defendant," and "any mitigating factors," whether "the defendant should be sentenced to life imprisonment with parole instead of life imprisonment without parole" reinforces our conclusion that the relevant statutory provisions create two sentencing options, neither of which is deemed to be presumptively appropriate, between which the trial court must choose based upon a consideration of the totality of the circumstances in light of the relevant substantive

standard set out in *Miller*. As a result, the relevant statutory language, when read in context, treats the sentencing decision required by N.C.G.S. § 15A-1340.19C(a) as a choice between two equally appropriate sentencing alternatives and, at an absolute minimum, does not clearly and unambiguously create a presumption in favor of sentencing juvenile defendants convicted of first-degree murder on the basis of a theory other than the felony murder rule to life imprisonment without the possibility of parole.

In urging us to determine that the relevant statutory provisions clearly and unambiguously embody a presumption in favor of a sentence of life imprisonment without the possibility of parole, defendant points to a number of expressions that the General Assembly utilized in describing the required sentencing decision. For example, defendant notes that the relevant statutory provisions require the sentencing court to determine whether a juvenile defendant convicted of first-degree murder on the basis of a theory other than the felony murder rule should be "sentenced to life imprisonment with parole *instead of* life imprisonment without parole" (emphasis added) and argues that the statutory expression "instead of" can only be understood to mean that a sentence of life imprisonment with parole is nothing more than an alternative to the presumptively correct sentence of life imprisonment without the possibility of parole. Although the word "instead" can be construed in a number of ways, it is typically understood "as an alternative or substitute." *New Oxford American Dictionary* 900 (3d ed. 2010). In accordance with

ordinary English usage, the fact that something is an "alternative or substitute" for something else means nothing more than that both alternatives are available without necessarily suggesting that one is preferred over the other. As a result, we believe that the statutory language requiring the sentencing judge to determine whether the defendant should be sentenced to life imprisonment with parole "instead of" life imprisonment without the possibility of parole is fully consistent with a construction that treats the language in question as requiring the sentencing judge to choose between two appropriate alternatives to be chosen on the basis of a proper application of the relevant legal standard rather than requiring the sentencing judge to select between a default sentence of life imprisonment without the possibility of parole and a secondary option of life imprisonment with parole.[4]

In addition, defendant directs our attention to the fact that the General Assembly referred to "mitigating factors" in N.C.G.S. § 15A-1340.19C(a) and included a list of potentially available "mitigating circumstances" in N.C.G.S. § 15A-1340.19B(c). Although a mitigating factor or circumstance is commonly understood as a consideration that "make[s something] less severe, serious, or painful" or "lessen[s] the gravity of" something "so as to make [that thing], esp. a crime, appear

---

[4] The same logic precludes us from concluding that the language contained in N.C.G.S. § 15A-1340.19B(d) allowing both "[t]he State and the defendant or the defendant's counsel" "to present argument for or against the sentence of life imprisonment with parole" was intended to create a presumption in favor of a sentence of life imprisonment without parole which should be given effect unless the defendant establishes that a sentence of life imprisonment with parole should be imposed.

less serious and thus [to] be punished more leniently," *New Oxford American Dictionary* 1121 (3d ed. 2010), the presence of these references to "mitigating factors" and "mitigating circumstances" in the relevant statutory language does not compel the conclusion that persuading the sentencing court to adopt and credit such mitigating evidence is necessary in order to preclude the imposition of a more severe, and presumptively correct, sentence. On the contrary, the consideration of "mitigating factors" or "mitigating circumstances" is clearly relevant to the determination of whether the less severe of the two available options should be imposed upon a particular defendant in light of the totality of the relevant circumstances and the applicable legal standard, with the State having introduced evidence of the circumstances surrounding the commission of the crime during the guilt-innocence phase of the trial and with the defendant having introduced evidence of mitigating circumstances in addition to those arising from the commission of the crime at the sentencing hearing. For that reason, a requirement that the sentencing judge consider evidence tending to show the existence of "mitigating factors" or "circumstances" is in no way inconsistent with a requirement that the sentencing authority make a choice between two equally appropriate alternatives based upon an analysis of the relevant evidence and the applicable law. Thus, the primary arguments that defendant has advanced in support of his assertion that the relevant statutory provisions create a presumption to the effect that, all other things being equal, a sentencing judge should sentence a juvenile convicted of first-degree murder

on the basis of a theory other than the felony murder rule to life imprisonment without the possibility of parole simply do not demonstrate that the relevant statutory language necessarily reflects reliance upon such a presumption and appear to view certain statutory provisions in isolation rather than analyzing the relevant statutory language in its entirety. *See N. Carolina Dep't of Transp. v. Mission Battleground Park, DST*, ___ N.C. ___, ___, 810 S.E.2d 217, 222 (2018) (reversing the Court of Appeals because that court's approval of the trial court's decision to exclude certain expert testimony was based upon a construction of N.C.G.S. § 93A-83(f) that failed to interpret the language of that subsection "holistically with the rest of the statute," and noting that "[p]erhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts," (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012))).

As we have already noted, the legislation in which the relevant statutory provisions appear is captioned "[a]n act to amend the state sentencing laws to comply with the . . . decision in *Miller v. Alabama*," Ch. 148, 2011 N.C. Sess. Laws (Reg. Sess. 2012) at 713, in which the United States Supreme Court stated that the imposition of sentences of life imprisonment without the possibility of parole upon such juvenile offenders would be "uncommon" and should be reserved for "the rare juvenile offender whose crime reflects irreparable corruption" rather than being imposed upon "the

juvenile offender whose crime reflects unfortunate yet transient immaturity." *Miller*, 567 U.S. at 479-80, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424 (quoting *Roper*, 543 U.S. at 573, 125 S. Ct. at 1197, 161 L. Ed. 2d 1, 24 (2005)); *see Montgomery v. Louisiana*, ___ U.S. at ___, 136 S. Ct. at 734, 193 L. Ed. 2d at 619-20 (reiterating that "*Miller* determined that sentencing a child to life without parole is excessive for all but 'the rare juvenile offender whose crime reflects irreparable corruption'" and "rendered life without parole an unconstitutional penalty" for "juvenile offenders whose crimes reflect the transient immaturity of youth" (first quoting *Miller*, 567 U.S. at 479-80, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424; then citing *Penry v. Lynaugh*, 492 U.S. 302, 330, 109 S. Ct. 2934, 2953, 106 L. Ed. 2d 256, 285 (1989))). In view of the fact "that a lifetime in prison is a disproportionate sentence for all but the rarest of children, those whose crimes reflect 'irreparable corruption,'" a statutory sentencing scheme embodying a presumption in favor of a sentence of life imprisonment without the possibility of parole for a juvenile convicted of first-degree murder on the basis of a theory other than the felony murder rule would be, at an absolute minimum, in considerable tension with the General Assembly's expressed intent to adopt a set of statutory provisions that complied with *Miller* and with the expressed intent of the United States Supreme Court that, as a constitutional matter, the imposition of a sentence of life imprisonment without the possibility of parole upon a juvenile be a rare event. *Montgomery*, ___ U.S. at ___, 136 S. Ct. at 726, 193 L. Ed. 2d at 611 (quoting *Miller*, 576 U.S. at 479-80, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424); *see also*

*People v. Gutierrez*, 58 Cal. 4th 1354, 1382, 1387, 324 P.3d 245, 264, 267 (2014) (holding that construing a sentencing statute as establishing "a presumption in favor of life without parole [for juvenile homicide offenders] raises serious constitutional concerns under the reasoning of *Miller* and the body of precedent upon which *Miller* relied"). Thus, the relevant canons of statutory construction to the effect that statutory language should, where reasonably possible, be construed so as to reflect the legislative intent stated in the statutory caption and to avoid constitutional difficulties clearly militate against the adoption of a construction of the relevant statutory language like that adopted by the Court of Appeals and contended for by defendant.

As a result, given that the statutory language contained in N.C.G.S. §§ 15A-1340.19A to 15A- 1340.19D is devoid of any express provision creating a presumption in favor of sentencing juveniles convicted of first-degree murder on the basis of a theory other than the felony murder rule to life imprisonment without the possibility of parole, given that the relevant statutory language is fully consistent with the view that the available sentencing options should be treated as alternatives to be adopted based upon an analysis of the relevant evidence in light of the applicable legal standard rather than as preferred and secondary alternatives, and given that construing the statutory language at issue in this case to incorporate a presumption in favor of the imposition of a sentence of life without the possibility of parole would conflict with the General Assembly's stated intent to comply with *Miller* and raise

serious doubts about the constitutionality of the challenged statutory provisions, we hold that the Court of Appeals erred by construing the relevant statutory language to incorporate such a presumption.[5] On the contrary, trial judges sentencing juveniles convicted of first-degree murder on the basis of a theory other than the felony murder rule should refrain from presuming the appropriateness of a sentence of life imprisonment without the possibility of parole and select between the available sentencing alternatives based solely upon a consideration of "the circumstances of the offense," "the particular circumstances of the defendant," and "any mitigating factors," N.C.G.S. § 15A-1340.19C(a), as they currently do in selecting a specific sentence from the presumptive range in a structured sentencing proceeding, in light of the United States Supreme Court's statements in *Miller* and its progeny to the effect that sentences of life imprisonment without the possibility of parole should be reserved for those juvenile defendants whose crimes reflect irreparable corruption rather than transient immaturity.

In his second challenge to the Court of Appeals' decision, defendant contends that, even if the relevant statutory provisions do not incorporate a presumption in favor of a sentence of life imprisonment without the possibility of parole, the Act violates the Eighth Amendment given that a "sentencing scheme [for juveniles

---

[5] In view of our determination that the relevant statutory provisions do not, contrary to the Court of Appeals' decision, incorporate a presumption in favor of the imposition of a sentence of life imprisonment without the possibility of parole, we need not definitely resolve the issue of whether the Court of Appeals erred by deeming such a presumption to be constitutionally permissible in the juvenile sentencing context.

convicted of first-degree murder] must begin with a presumption in favor of life with parole" in light of the United States Supreme Court's recognition of the differences between adult and juvenile offenders and the rarity with which the United States Supreme Court believes that sentences of life imprisonment without parole should be imposed upon juveniles convicted of first-degree murder. In addition, defendant contends that a sentencing scheme that is devoid of any requirement that a jury find the existence of one or more aggravating circumstances or that a sentencing judge find the juvenile to be "irreparably corrupt" or "permanently incorrigible" before the juvenile can be sentenced to life imprisonment without the possibility of parole and, instead, merely requires a sentencing judge to "consider" mitigating factors and make findings based on the "absence or presence" of such factors "hinders the trial court's ability to winnow the class of juvenile defendants to those who might qualify for a sentence of life without parole" so as to be "unconstitutionally vague" and create an impermissible risk of the imposition of arbitrary sentences of life without the possibility of parole upon a juvenile defendant convicted of first-degree murder. The State, on the other hand, argues that, because *Miller* provided "boundaries sufficiently distinct for judges to interpret and administer [the statutes] uniformly" and because the relevant statutory provisions require use of "the precise method and procedure that is set out" in *Miller*, the Court of Appeals correctly held that the Act "is not unconstitutionally vague and will not lead to arbitrary sentencing decisions."

A statute is unconstitutionally vague in the event that it "(1) fails to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited;' or (2) fails to 'provide explicit standards for those who apply [the law].'" *State v. Green*, 348 N.C. 588, 597, 502 S.E.2d 819, 824 (1998) (alteration in original) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 2298-99, 33 L. Ed. 2d 222, 227 (1972)), *cert. denied*, 525 U.S. 1111, 119 S. Ct. 883, 142 L. Ed. 2d 783 (1999). In upholding the validity of the legislation at issue in *Green*, this Court construed the relevant statutory language *in pari materia* with other parts of the Juvenile Code, including the statutory specification of the factors that must be weighed in making juvenile dispositional decisions; considered "the evolving standards and will of the majority in society," which suggested support for more stringent treatment of juvenile offenders; and determined that the relevant statutory language, when considered "in light of the entire Juvenile Code, provides sufficient guidance to juvenile court judges in making transfer decisions and does not on its face violate due process principles." *Id.* at 599-600, 502 S.E.2d at 826. Similarly, a trial judge required to sentence a juvenile convicted of first-degree murder on the basis of a theory other than the felony murder rule must consider "all the circumstances of the offense," "the particular circumstances of the defendant," and the mitigating circumstances enumerated in subsection 15A-1340.19B(c), N.C.G.S. § 15A-1340.19C, and comply with *Miller*'s directive that sentences of life imprisonment without the possibility of parole for juveniles convicted of first-degree murder should be the exception, rather than the

rule, with the "harshest prison sentence" to be reserved for "the rare juvenile offender whose crime reflects irreparable corruption," rather than "unfortunate yet transient immaturity." *Miller*, 567 U.S. at 479-80, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424. In our view, the statutory provisions at issue in this case, when considered in their entirety and construed in light of the constitutional requirements set out in *Miller* and its progeny as set out in more detail above, provide sufficient guidance to allow a sentencing judge to make a proper, non-arbitrary determination of the sentence that should be imposed upon a juvenile convicted of first-degree murder on a basis other than the felony murder rule to satisfy due process requirements.

Similarly, we conclude that defendant's arbitrariness argument, which rests upon the assertion that the sentencing authority must either find the existence of aggravating circumstances or make other "narrowing" findings before sentencing a juvenile convicted of first degree murder to life imprisonment without the possibility of parole, lacks merit. Although the United States Supreme Court did hold in *Zant v. Stephens*, 462 U.S. 862, 103 S. Ct. 2733, 77 L. Ed. 2d 235 (1983), that a capital sentencing statute that utilized statutory aggravating factors for the sole purpose of "categorical narrowing at the definition stage" so as to "circumscribe the class of persons eligible for the death penalty" was constitutional, *id.* at 878-79, 103 S. Ct. at 2743-44, 77 L. Ed. 2d at 250-51, nothing in either *Zant* or *Miller* suggests that such a formalized narrowing process is constitutionally required prior to the imposition of a valid sentence of life imprisonment without the possibility of parole upon a juvenile

convicted of first-degree murder on the basis of a theory other than the felony murder rule.[6] Aside from the fact that "the penalty of death is qualitatively different from a sentence of imprisonment, however long," *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S. Ct. 2978, 2991, 49 L. Ed. 2d 944, 961 (1976), *Miller* and its progeny focus upon the necessity for requiring sentencing authorities "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison," *Miller*, 567 U.S. at 479-80, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424, with these differences including "chronological age and its hallmark features," such as "immaturity, impetuosity, and failure to appreciate risks and consequences"; "the family and home environment that surrounds" the juvenile; "the circumstances of the homicide offense" committed by the juvenile, "including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; and any "incompetencies associated with youth – for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys," while preventing a court from "disregard[ing] the possibility of rehabilitation even when the circumstances most suggest it," *id.* at 477-78, 132 S. Ct. at 2468, 183 L. Ed. 2d at 422-23. According

---

[6] Although we hold that a formal narrowing process is not required by *Miller* and its progeny, N.C.G.S. § 15A-1340.19B and N.C.G.S. § 15A-1340.19C do, as construed above, serve a narrowing function by precluding the imposition of a sentence of life imprisonment without the possibility of parole upon a juvenile convicted of first-degree murder on the basis of the felony murder rule and limiting the extent to which juveniles convicted of first-degree murder on the basis of other legal theories can be sentenced to life imprisonment without the possibility of parole.

to *Miller*, a sentencing authority is required to "follow a certain process – considering an offender's youth and attendant characteristics" and other "mitigating circumstances before imposing the harshest penalty for juveniles," *id.* at 483, 489, 132 S. Ct. at 2471, 2475, 183 L. Ed. 2d at 426, 430, in light of the applicable legal standard. As a result of the fact that the statutory provisions at issue in this case require consideration of the factors enunciated in *Miller* and its progeny and the fact that *Miller* and its progeny indicate that life without parole sentences for juveniles should be exceedingly rare and reserved for specifically described individuals, we see no basis for concluding that the absence of any requirement that the sentencing authority find the existence of aggravating circumstances or make any other narrowing findings prior to determining whether to impose a sentence of life without parole upon a juvenile convicted of first-degree murder on a basis other than the felony murder rule renders the sentencing process enunciated in N.C.G.S. §§ 15A-1340.19A to 15A-1340.19D unconstitutionally arbitrary or vague.[7]

---

[7] Although defendant has not questioned the correctness of the Court of Appeals' rejection of his challenge to the relevant statutory provisions as violative of his Sixth Amendment right to a jury trial, he did argue before this Court that the failure of N.C.G.S. § 15A-1340.19B and N.C.G.S. § 15A-1340.19C to require a narrowing finding violates the principles enunciated in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Blakely v. Washington*, 542 U.S 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), by failing to require that a jury find the aggravating circumstances that he believes to be necessary in order to avoid a finding of arbitrariness. However, we need not address this argument given our conclusion that a valid statutory scheme for the sentencing of juveniles convicted of first-degree murder does not require the sentencing authority to find the existence of aggravating circumstances before imposing a sentence of life imprisonment without the possibility of parole.

Finally, defendant urges this Court to reverse the Court of Appeals' decision to reject his challenge to the relevant statutory provisions on ex post facto law grounds on the theory that the sentences of life imprisonment without the possibility of parole and life imprisonment with parole permitted by the Act "were more severe than the sentence [that defendant] could have received if he had been sentenced based on the lawful provisions in effect" when the murder for which he was convicted occurred. In defendant's view, the fact that the pre-*Miller* statutory provisions authorizing the imposition of a mandatory sentence of life imprisonment without the possibility of parole upon juveniles convicted of first-degree murder lacked a "savings clause" authorizing the imposition of an alternative punishment in the event that the applicable mandatory life without parole sentence was declared to be unconstitutional means that "there was no constitutional sentence for first-degree murder committed by a juvenile on the offense date for this case." As a result, defendant asserts that he "could not be sentenced for" first-degree murder and must be sentenced as if he had been convicted of second-degree murder, which was "the most severe constitutional penalty established by the legislature for criminal homicide at the time the offense was committed," first quoting *State v. Roberts*, 340 So. 2d 263, 263 (La. 1976), and then citing, *inter alia, State v. Kirkman*, 293 N.C. 447, 460-61, 238 S.E.2d 456, 464 (1977) (noting that a life imprisonment sentence did not violate the ex post facto clause when the statute mandating the death penalty for first-degree murder also set out life imprisonment as the applicable punishment

should death sentences be determined unconstitutional); *also citing United States v. Under Seal*, 819 F.3d 715, 726 (4th Cir. 2016); and *Commonwealth v. Brown*, 466 Mass. 676, 1 N.E.3d 259 (2013). The State, on the other hand, contends that the Act imposes the "same legal consequence of life imprisonment without parole as the sentencing statute at the time of the murder" and does not, for that reason, impermissibly disadvantage defendant and asserts that defendant's ex post facto law claim is foreclosed by the United States Supreme Court's rejection of a similar argument in *Dobbert v. Florida*, 432 U.S. 282, 97 S. Ct. 2290, 53 L. Ed. 2d 344 (1977).

The federal and state constitutions prohibit the enactment and enforcement of ex post facto laws, which "allow[ ] imposition of a different or greater punishment than was permitted when the crime was committed." *State v. Barnes*, 345 N.C. 184, 233-34, 481 S.E.2d 44, 71 (1997) (quoting *State v. Vance*, 328 N.C. 613, 620-21, 403 S.E.2d 495, 500 (1991)), *cert. denied*, 523 U.S. 1024, 118 S. Ct. 1024, 140 L. Ed. 2d 473 (1998). "There are two critical elements to an *ex post facto* law: that it is applied to events occurring before its creation and that it disadvantages the accused that it affects." *Id.* at 234, 481 S.E.2d at 71 (citing *Vance*, 328 N.C. at 620-21, 403 S.E.2d at 500). As the Court of Appeals noted, "[t]here is no dispute concerning the [existence of the] first element in this case," since the law pursuant to which defendant was resentenced was enacted years after the commission of the crime for which he was being sentenced. *James*, ___ N.C. App. at ___, 786 S.E.2d at 77. The Court of Appeals was also correct in holding that the relevant statutory provisions did not "allow[ ]

imposition of a different or greater punishment than was permitted when the crime was committed," *Vance*, 328 N.C. at 620, 403 S.E.2d at 500 (citing *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L. Ed. 648, 650 (1798) (opinion of Chase, J.)), so as to impermissibly disadvantage defendant.  Instead, N.C.G.S. §§ 15A-1340.19A to 15A-1340.19D allows the trial court to choose between the same punishment required by prior law and a less severe punishment.

The Court of Appeals correctly rejected defendant's contention that he should have been resentenced as if he had been convicted of second-degree murder on the basis of *Dobbert*, which held that a new sentencing statute that was enacted to address constitutional defects in an earlier sentencing statute and that preserved the availability of the same punishment authorized by the earlier, unconstitutional statute did not result in an ex post facto violation given that the earlier statute "provided fair warning as to the degree of culpability which the State ascribed to the act of murder."  *Dobbert*, 432 U.S. at 297, 97 S. Ct. at 2300, 53 L. Ed. 2d at 359. Although defendant attempts to distinguish *Dobbert* as a procedural, rather than a substantive, decision, we believe that *Dobbert* is not subject to the sort of parsing that defendant urges us to conduct.  Instead of resting on a substance – procedure dichotomy, *Dobbert* hinged upon both the ameliorative nature of the challenged statutory change and the fact that the changes were procedural in nature.  *Id.* at 292, 97 S. Ct. at 2298, 53 L. Ed. 2d at 355.  As a result, given that N.C.G.S. §§ 15A-1340.19A to 15A-1340.19D make a reduced sentence available to defendant and

specify procedures that a sentencing judge is required to use in making the sentencing decision, we believe that defendant's challenge to the validity of the relevant statutory provisions as an impermissible ex post facto law is without merit.

Thus, for the reasons set forth above, we conclude that the Court of Appeals decision to the effect that N.C.G.S. §§ 15A-1340.19A to 15A-1340.19D incorporated a presumption in favor of the imposition of a sentence of life imprisonment without the possibility of parole upon juveniles convicted of first-degree murder on the basis of a theory other than the felony murder rule was erroneous, that the relevant statutory provisions do not incorporate a presumption in favor of a sentence of life without parole, and that the Court of Appeals correctly rejected defendant's challenge to N.C.G.S. §§ 15A-1340.19A to 15A-1340.19D as impermissibly vague, conducive to the imposition of arbitrary punishments, or an unconstitutional ex post facto law. On remand, the required further sentencing proceedings must be conducted in a manner that is not inconsistent with this opinion and the decisions of the United States Supreme Court in *Miller* and *Montgomery*. As a result, we hold that the Court of Appeals decision should be modified and affirmed, and that this case should be remanded to the Court of Appeals for further remand to the Superior Court, Mecklenburg County, for further proceedings not inconsistent with this opinion, including further sentencing proceedings.

MODIFIED AND AFFIRMED; REMANDED.

Justice BEASLEY dissenting.

While I agree with the majority that defendant is entitled to resentencing and that the statute does not constitute an ex post facto law or violate due process protections, I disagree with the majority's judicial construction of N.C.G.S. § 15A-1340.19C(a). The majority finds seemingly ambiguous language within N.C.G.S. § 15A-1340.19C(a), in order to read it as constitutionally complying with *Miller v. Alabama*, 567 U.S. 460, 183 L. Ed. 2d 407 (2012); however, N.C.G.S. § 15A-1340.19C(a) is clear and unambiguous, and I would hold the plain meaning of this section unconstitutional under *Miller* because it creates a presumption in favor of sentencing a juvenile to life without parole. Therefore, I respectfully dissent.

Here, defendant challenges, *inter alia,* N.C.G.S. § 15A-1340.19C(a) as creating a presumptive sentence of life without parole for juveniles in direct opposition to the Supreme Court of the United States' interpretation of the Eighth Amendment's prohibition of cruel and unusual punishments in *Miller*. *See Miller*, 567 U.S. at 470, 183 L. Ed. 2d at 418; *see also Montgomery v. Louisiana*, 577 U.S. ___, ___, 193 L. Ed. 2d 599, 622 (2016) (holding that *Miller* is a substantive rule of constitutional law and thus applying its standard retroactively to juveniles sentenced to life without parole by allowing "juvenile homicide offenders to be considered for parole, rather than by resentencing them"). "Although *Miller* did not foreclose a sentencer's ability to impose life without parole on a juvenile, the Court explained that a lifetime in prison

is a disproportionate sentence for all but the *rarest of children*, those whose crimes reflect 'irreparable corruption.' " *Montgomery*, 577 U.S. at \_\_\_, 193 L. Ed. 2d at 611 (emphasis added) (quoting *Miller*, 567 U.S. at 479-80, 183 L. Ed. 2d at 424 (quoting *Roper v. Simmons*, 543 U.S. 551, 573, 161 L. Ed. 2d 1, 24 (2005))). Therefore, a presumption in favor of sentencing a juvenile to life without parole would contravene *Miller*'s admonition to only sentence the "rarest" of juveniles to such a punishment.

"Where the language of a [statute] is clear and unambiguous, there is no room for judicial construction and the courts must give [the statute] its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *King v. Albemarle Hosp. Auth.*, \_\_\_ N.C. \_\_\_, \_\_\_, 809 S.E.2d 847, 852 (2018) (Beasley, J., dissenting) (brackets in original) (quoting *State v. Camp*, 286 N.C. 148, 152, 209 S.E.2d 754, 756 (1974)); *see also Dep't of Transp. v. Adams Outdoor Advert. of Charlotte Ltd. P'ship*, 370 N.C. 101, 107, 804 S.E.2d 486, 492 (2017) ("When the language of a statute is plain and free from ambiguity, expressing a single, definite and sensible meaning, that meaning is conclusively presumed to be the meaning which the Legislature intended, and the statute must be interpreted accordingly." (quoting *State Highway Comm'n v. Hemphill*, 269 N.C. 535, 539, 153 S.E.2d 22, 26 (1967))). In fact, "[t]he actual intention of the legislat[ure] is quite immaterial [to a plain reading construction]; what matters is the way in which [legislators] ha[ve] actually expressed [their] intention. We must look to the wording of the statute, and to that alone." *King*, \_\_\_

N.C. at \_\_\_, 809 S.E.2d at 852 (alterations two through five in original (quoting Ernest Bruncken, *Interpretation of the Written Law*, 25 Yale L.J. 129, 130 (1915))).

N.C.G.S. § 15A-1340.19C(a), with respect to sentencing a juvenile upon a conviction for first-degree murder based on a theory of premeditation and deliberation, provides that "[t]he court shall consider any *mitigating* factors in determining whether, based upon all the circumstances of the offense and the particular circumstances of the defendant, the defendant should be sentenced to life imprisonment with parole *instead of* life imprisonment without parole." N.C.G.S. § 15A-1340.19C(a) (2017) (emphases added). In interpreting the plain meaning of this section, defendant argues that the language " 'instead of' strongly suggests that a sentence of life with parole is simply a secondary alternative to the default sentence of life without parole." Defendant further contends that "the court's decision under the sentencing scheme is guided almost exclusively by the existence of mitigating factors" and "does not require evidence of any aggravating factors that would render a juvenile eligible for the higher sentence of life without parole." Defendant notes that mitigating factors are used by defendants only to show that their case "warrant[s] a less severe sentence." *State v. Norris*, 360 N.C. 507, 512, 630 S.E.2d 915, 918, *cert. denied*, 549 U.S. 1064, 166 L. Ed. 2d 535 (2006).

Here, the Court of Appeals found "that the use of 'instead of' [in N.C.G.S. § 15A-1340.19C(a)], considered alone, does not show there is a presumption in favor of

life without parole." *State v. James*, ___ N.C. App. ___, ___, 786 S.E.2d 73, 79 (2016).

Nonetheless, the Court of Appeals also deduced that

> the reason for the General Assembly's use of "instead of" in N.C. Gen. Stat. § 15A-1340.19C(a), as opposed to "or," becomes clear when considered in light of the fact that the sentencing guidelines require the court to consider only mitigating factors. *Because the statutes only provide for mitigation from life without parole to life with parole and not the other way around, it seems the General Assembly has designated life without parole as the default sentence, or the starting point for the court's sentencing analysis.* Thus, to the extent that starting the sentencing analysis with life without parole creates a presumption, we agree with defendant there is a presumption.

*Id.* at ___, 786 S.E.2d at 79 (emphasis added).

In this case, the legislature expressed its meaning unambiguously in N.C.G.S. § 15A-1340.19C(a) to require a presumption for life without parole, and I agree with the Court of Appeals' conclusion that this provision creates a presumption for life without parole. *Id.* at ___, 786 S.E.2d at 79. Unlike the Court of Appeals, however, I would find the existence of a presumption in favor of sentencing a juvenile to life without parole unconstitutional under *Miller*.

A presumptive sentence of life without parole for juveniles sentenced under this statute contradicts *Miller*. "*Miller* determined that sentencing a child to life without parole is excessive for all but 'the rare juvenile offender whose crime reflects irreparable corruption.'" *Montgomery*, 577 U.S. at ___, 193 L. Ed. 2d at 619 (quoting *Miller*, 567 U.S. at 479-80, 183 L. Ed. 2d at 424). Furthermore, *Miller* and its

predecessors, *Roper v. Simmons* and *Graham v. Florida*, have emphatically established "that children are constitutionally different from adults for purposes of sentencing." *Miller*, 567 U.S. at 471, 183 L. Ed. 2d at 418; *see Roper*, 543 U.S. at 568, 161 L. Ed. 2d at 21-22 (holding that the death penalty may not be constitutionally imposed on juveniles because to do so would violate the Eighth Amendment); *see also Graham v. Florida*, 560 U.S. 48, 74, 176 L. Ed. 2d 825, 845 (2010) ("This Court now holds that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole."). Juveniles "are less deserving of the most severe punishments," *Miller*, 567 U.S. at 471, 183 L. Ed. 2d at 418 (quoting *Graham*, 560 U.S. at 68, 176 L. Ed. 2d at 841), and "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Id.* at 472, 183 L. Ed. 2d at 419. A presumption in favor of life without parole—the harshest sentence that a juvenile may receive constitutionally under the Eighth Amendment— flouts *Miller* and should not be upheld by this Court.[1]

---

[1] Other state courts have looked at this issue similarly, in light of the United States Supreme Court's directive that the sentence of life without parole must be reserved for only the rarest of juvenile offenders. For example, some jurisdictions have read *Miller* to require the sentencing court to make a more individualized finding that the sentence of life without parole is warranted. *See e.g.*, *Commonwealth v. Batts*, 163 A.3d 410, 452 (Pa. 2017) ("The United States Supreme Court did not outlaw a sentence of life in prison without the possibility of parole for all juveniles convicted of first-degree murder; it is only a disproportionate (illegal) sentence for those offenders who may be capable of rehabilitation. Therefore, the presumption against the imposition of this punishment is rebuttable by the Commonwealth upon proof that the juvenile is removed from this generally recognized class of potentially rehabilitable offenders." (citations omitted)); *People v. Hyatt*, 316 Mich. App.

Here, the presumption of life without parole is apparent when considering that, in combination with its use of the phrase "instead of," N.C.G.S. § 15A-1340.19C(a) only requires the trial court to evaluate mitigating factors. While the

---

368, 419, 891 N.W.2d 549, 574 ("The cautionary language employed by the Court in *Roper, Graham, Miller*, and *Montgomery* must be honored by this Court. In light of this language and our need to review defendant Hyatt's sentence under *Miller,* we conclude that when sentencing a juvenile offender, a trial court must begin with the understanding that in all but the rarest of circumstances, a life-without-parole sentence will be disproportionate for the juvenile offender at issue."), *appeal denied sub nom.*, *People v. Williams*, 500 Mich. 921, 888 N.W.2d 64 (2016); *Aiken v. Byars*, 410 S.C. 534, 543, 765 S.E.2d 572, 577 (2014) ("*Miller* does more than ban mandatory life sentencing schemes for juveniles; it establishes an affirmative requirement that courts fully explore the impact of the defendant's juvenility on the sentence rendered."), *cert. denied*, ___ U.S. ___, 192 L. Ed. 2d 179 (2015).

Furthermore, some states have taken the admonition that these sentences must truly be a rare occurrence even further by entirely abolishing the penalty of life without parole for juvenile offenders. In fact, according to an Associated Press study conducted in July 2017, the following states have entirely abolished life without parole for juveniles: Alaska, Connecticut, District of Columbia, Hawaii, Iowa, Kansas, Kentucky, Massachusetts, Minnesota, Montana, Nevada, New Jersey, North Dakota, South Carolina, South Dakota, Utah, Vermont, West Virginia, and Wyoming. The Associated Press, *A State-By-State Look at Juvenile Life Without Parole*, U.S. News (July 31, 2017, 5:28 p.m.), https://www.usnews.com/news/best-states/utah/articles/2017-07-31/a-state-by-state-look-at-juvenile-life-without-parole. Of particular relevance here, of these states abolishing life without parole for juveniles after *Miller*, Iowa and Massachusetts did so through judicial rulings. *See State v. Sweet*, 879 N.W.2d 811, 832 (Iowa 2016) (holding the sentence of life without parole for juvenile offenders unconstitutional under the Iowa Constitution, but also noting that "in Iowa, the United States Constitution as interpreted by the Supreme Court prevents the state from imposing life without the possibility of parole in most homicide cases involving juveniles. If life without the possibility of parole may be imposed at all under federal law, which is unclear at this point, it *may be imposed only in cases where irretrievable corruption has been demonstrated by the "rarest" of juvenile offenders.*" (emphasis added)); *Diatchenko v. Dist. Att'y for Suffolk Dist.*, 466 Mass. 655, 667-71, 1 N.E.3d 270, 282-85 (2013) (invalidating a mandatory juvenile life without parole scheme as unconstitutional under *Miller* and the Massachusetts State Constitution and also holding a discretionary sentencing system to impose life without parole on a juvenile unconstitutional under the state constitution).

majority aptly demonstrates that "instead of" is defined as "an alternative or substitute," rather than a categorical indication of one preferred method over another, the majority fails to properly consider the role of weighing aggravating versus mitigating factors and the effect of this balancing process on the trial court's choice to sentence a defendant to "life imprisonment with parole *instead of* life imprisonment without parole." N.C.G.S. § 15A-1340.19C(a) (emphasis added). Specifically, after recognizing that mitigation makes a sentence "less severe, serious, or painful," the majority merely concludes that requiring consideration of only mitigating factors "does not compel the conclusion that persuading the sentencing court to adopt and credit such mitigating evidence is necessary in order to preclude the imposition of a more severe, and presumptively correct, sentence." Given the majority's provided definition of mitigating (namely, reducing the severity of a sentence), the consideration of mitigating circumstances can only operate to move from a harsher to a lesser sentence. Therefore, in this context, mitigation can only mean one thing—moving from imposing a life sentence without the possibility of parole to a life sentence with the possibility of parole.

The statute's language, viewed both independently and in conjunction with the other portions of the North Carolina structured sentencing statutes codified in Article 81B of Chapter 15A, in which trial courts weigh not only mitigating factors but also aggravating factors, compels the conclusion that N.C.G.S. § 15A-1340.19C(a) creates a presumption in favor of sentences of life without parole. *See, e.g.,* N.C.G.S. § 15A-

1340.16 (2017) (describing the general procedures for consideration of aggravating and mitigating factors when moving beyond the presumptive range for sentencing, and including a list of both types of factors); *id.* § 15A-1340.16B(a) (requiring imposition of a life imprisonment without parole sentence "[i]f a person is convicted of a Class B1 felony and it is found as provided in this section that: (i) the person committed the felony against a victim who was 13 years of age or younger at the time of the offense and (ii) the person has one or more prior convictions of a Class B1 felony," unless there are mitigating factors present); *id.* § 15A-1340.16E (requiring the State to prove criminal gang activity in the same manner as an aggravating factor in order to impose enhanced sentence); *id.* § 15A-1340.17(c) (containing the classification of offenses and prior record level charts and explaining how to consider aggravating and mitigating factors when sentencing). If the statute required both a consideration of aggravating *and* mitigating circumstances, it would be possible to see how a juvenile's sentence could be elevated from life with parole to life without parole, the harshest of sentences possible for juvenile offenders. *Cf. Circumstance*, *Black's Law Dictionary* (10th ed. 2014) (defining "aggravating circumstance" as "[a] fact or situation that relates to a criminal offense or defendant and that is considered by the court in imposing punishment (esp. a death sentence)"). A consideration of aggravating circumstances would allow the trial court to better decide when to move from sentencing a defendant to life with parole to life without parole. Particularly, a trial court's consideration of aggravating circumstances may help to identify "those

whose crimes reflect permanent incorrigibility." *Montgomery*, ___ U.S. at ___, 193 L.

Ed. 2d at 620.

Additionally, the consideration of aggravating circumstances in this context

makes sense when considering that the Supreme Court has compared a juvenile's

sentence of life without parole with an adult's sentence of the death penalty. In

*Graham*, the court said that

> life without parole is "the second most severe penalty
> permitted by law." It is true that a death sentence is
> "unique in its severity and irrevocability," yet life without
> parole sentences share some characteristics with death
> sentences that are shared by no other sentences. The State
> does not execute the offender sentenced to life without
> parole, but the sentence alters the offender's life by a
> forfeiture that is irrevocable. It deprives the convict of the
> most basic liberties without giving hope of restoration,
> except perhaps by executive clemency—the remote
> possibility of which does not mitigate the harshness of the
> sentence. As one court observed in overturning a life
> without parole sentence for a juvenile defendant, this
> sentence "means denial of hope; it means that good
> behavior and character improvement are immaterial; it
> means that whatever the future might hold in store for the
> mind and spirit of [the convict], he will remain in prison for
> the rest of his days."

560 U.S. at 69-70, 176 L. Ed. 2d at 842 (brackets in original) (citations omitted).

Importantly, for the death penalty "[t]o pass constitutional muster, a capital

sentencing scheme must 'genuinely narrow the class of persons eligible for the death

penalty and must reasonably justify the imposition of a more severe sentence on the

defendant compared to others found guilty of murder.' " *Lowenfield v. Phelps*, 484

U.S. 231, 244, 98 L. Ed. 2d 568, 581 (1988) (quoting *Zant v. Stephens,* 462 U.S. 862, 877, 77 L. Ed. 2d 235, 249-50 (1983)). Just as the Supreme Court has required narrow tailoring for capital sentencing, the Court in the *Graham–Roper–Miller–Montgomery* line of cases mandated that sentencing jurisdictions provide sufficient safeguards to account for the unique position of juveniles and reserve juvenile sentences of life without parole to only the rarest of circumstances.

Here, the plain meaning of N.C.G.S. § 15A-1340.19C(a) starts with a presumption of life without parole and only allows a juvenile to mitigate to a reduced sentence of life with parole. Starting with a presumption of life without parole means juveniles will always have to demonstrate that they are not the "rare" case. Because the plain meaning of this statute does not comply with the Supreme Court's interpretation of the Eighth Amendment in *Miller*, I respectfully dissent.

Justice HUDSON joins in this dissenting opinion.