INMAN, Judge.
 

 *522
 

 *516
 
 More than a decade ago, the United States Supreme Court outlawed capital punishment for even the worst offenders under the age of eighteen. Six years ago, the United States Supreme Court held that the Eighth Amendment to the United States Constitution also prohibits mandatory life sentences without parole for juvenile offenders. Which leads to the next question: When does the Eighth Amendment allow for the sentencing of a juvenile offender to prison for life without the possibility of parole? Despite extensive critiques, courts in all jurisdictions are still discerning the appropriate criteria and methodology for
 
 *517
 
 imposing the harshest of sentences on young people whose entire lives lie before them and whose potential for change is generally unknowable.
 

 This appeal presents the conflict arising when a trial court expressly finds that a juvenile offender's likelihood of rehabilitation is uncertain and sentences him to life in prison without parole. We hold that the United States Supreme Court's mandate that life without parole is reserved for those juvenile defendants who exhibit such irretrievable depravity that rehabilitation is impossible compels us to vacate the sentence in this case and remand for Defendant to be re-sentenced to life with the possibility of parole.
 

 I. Facts and Procedural History
 

 In 2008, Defendant was indicted on two counts of first-degree murder in the shooting deaths of Terry Rashad Long and Joshua Vinsel Davis. At the time of the shooting, Defendant was seventeen years old. In 2011, following a trial in Mecklenburg County Superior Court, a jury convicted Defendant on both charges based on a theory of malice, premeditation, and deliberation. Defendant was sentenced to two consecutive terms of life in prison without the possibility of parole. This Court upheld Defendant's conviction and sentence on appeal,
 
 State v. Williams
 
 ,
 
 220 N.C. App. 130
 
 ,
 
 724 S.E.2d 654
 
 (2012), and the North Carolina Supreme Court dismissed his petitions for review.
 
 State v. Williams
 
 ,
 
 366 N.C. 240
 
 ,
 
 731 S.E.2d 167
 
 (2012).
 

 In June 2012, the United States Supreme Court decided
 
 Miller v. Alabama
 
 ,
 
 567 U.S. 460
 
 ,
 
 132 S.Ct. 2455
 
 ,
 
 183 L.Ed.2d 407
 
 (2012), holding that mandatory sentences of life without parole for juvenile offenders violate the Eighth Amendment's prohibition against cruel and unusual punishments. Weeks later, in July 2012, the North Carolina General Assembly enacted an amendment to the sentencing statute, N.C. Gen. Stat. § 15A-1340.19B, removing the mandatory life sentence without parole for juvenile murderers and replacing it with a permissive sentencing scheme. 2012 N.C. Sess. Law 2012-148, § 1. The amended statute delineates mitigating factors to be considered in sentencing: (1) the offender's age at the time of offense; (2) immaturity; (3) ability to appreciate the risks and consequences of the conduct; (4) intellectual capacity; (5) prior record; (6) mental health; (7) familial or peer pressure exerted upon him; (8) likelihood that he would benefit from rehabilitation in confinement; and (9) other mitigating factors and circumstances. N.C. Gen. Stat. § 15A-1340.19B (2017).
 

 Following the
 
 Miller
 
 decision, Defendant filed a motion for appropriate relief seeking a new sentencing hearing. Defendant's motion was
 
 *518
 
 granted. At the resentencing hearing, Defendant presented evidence related to several mitigating factors. After consideration of the evidence and arguments by counsel, the trial court entered a lengthy order containing 52 findings of fact and 16 conclusions of law; among them, the following conclusion: "There is no certain prognosis of Defendant[']s possibility of rehabilitation. The speculation of Defendant's ability to be rehabilitated can
 
 *523
 
 only be given minimal weight as a mitigating factor." The trial court sentenced Defendant to serve two consecutive sentences of life without parole, and Defendant appealed.
 

 II. Analysis
 

 In his original brief to this Court, Defendant argued that his sentence should be vacated because: (1) the trial court's finding that Defendant's potential for rehabilitation was speculative removes him from the permissible class of juveniles whom the United States Supreme Court has held are eligible for life without parole; (2) the trial court failed to give the required weight to the mitigating factors of youth, immaturity, diminished appreciation of risk, and negative peer and family pressure; (3) the trial court relied on unsupported findings regarding escalation of prior offenses and that the offense of which Defendant was convicted was a "Planned Ambush;" and (4) that N.C. Gen. Stat. § 15A-1340.19B is unconstitutional on its face. Because we are bound by the North Carolina Supreme Court's recent decision in
 
 State v. James
 
 , --- N.C. ----,
 
 813 S.E.2d 195
 
 (2018), which upheld the constitutionality of N.C. Gen. Stat. § 15A-1340.19B, we reject Defendant's fourth argument and will not address it further. Because we agree with Defendant's first argument that the trial court's finding rendered him ineligible for sentences of life without parole, we need not address his remaining arguments.
 

 A. Standard of Review
 

 This Court reviews constitutional issues
 
 de novo
 
 .
 
 State v. Rogers
 
 ,
 
 352 N.C. 119
 
 , 124,
 
 529 S.E.2d 671
 
 , 675 (2000). "Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal."
 
 State v. Williams
 
 ,
 
 362 N.C. 628
 
 , 632-33,
 
 669 S.E.2d 290
 
 , 294 (2008) (internal quotation marks and citations omitted).
 

 B. Discussion
 

 After prohibiting mandatory sentences of life without parole for juvenile offenders in
 
 Miller v. Alabama
 
 ,
 
 567 U.S. 460
 
 ,
 
 132 S.Ct. 2455
 
 ,
 
 183 L.Ed.2d 407
 
 (2012), the United States Supreme Court held in
 
 Montgomery v. Louisiana
 
 that "a lifetime in prison is a disproportionate sentence
 
 *519
 
 for all but the rarest of children, those whose crimes reflect irreparable corruption" and "who exhibit such irretrievable depravity that
 
 rehabilitation is impossible
 
 ." --- U.S. ----, ----, ----,
 
 136 S.Ct. 718
 
 , 726, 733,
 
 193 L.Ed.2d 599
 
 , 611, 619 (2016) (internal quotation marks and citations omitted) (emphasis added).
 

 In this case we face a question of first impression: whether the Supreme Court's holdings require trial courts to determine, as a threshold matter, whether a juvenile defendant is eligible for such punishment independent of other relevant factors, or whether it merely identifies additional factors that the trial court must consider as it weighs the totality of circumstances in making its sentencing decision. The answer lies in further study of
 
 Miller
 
 and its progeny.
 

 In
 
 Miller
 
 , the United States Supreme Court held that mandatory sentences of life in prison without parole for juveniles-anyone under the age of eighteen-violate the Eighth Amendment to the United States Constitution's prohibition against cruel and unusual punishments.
 
 567 U.S. at 465
 
 ,
 
 132 S.Ct. at 2460-61
 
 ,
 
 183 L.Ed.2d at 415
 
 . The Court reasoned that "juveniles have diminished culpability and greater prospects for reform ... [thereby making them] less deserving of the most severe punishments."
 

 Id.
 

 at 471
 
 ,
 
 132 S.Ct. at 2464
 
 ,
 
 183 L.Ed.2d at 418
 
 (internal quotation marks and citation omitted). The Court provided no specific criteria for sentencing a juvenile to life in prison without parole but predicted that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon."
 

 Id.
 

 at 479
 
 ,
 
 132 S.Ct. at 2469
 
 ,
 
 183 L.Ed.2d at 424
 
 .
 

 Following
 
 Miller
 
 , courts disputed whether its holding proscribed a procedural rule of constitutional law, which would apply only to prospective cases, or a substantive rule that applied retroactively. In
 
 Montgomery
 
 , the Supreme Court held that
 
 Miller
 
 "announced a substantive rule of constitutional law." --- U.S. at ----,
 
 136 S.Ct. at 734
 
 ,
 
 193 L.Ed.2d at 620
 
 . However, the Court cautioned that States would be required to develop procedural criteria to protect juveniles' substantive
 
 *524
 
 rights: "[t]hat
 
 Miller
 
 does not impose a formal factfinding requirement does not leave States free to sentence a child whose crime reflects transient immaturity to life without parole. To the contrary,
 
 Miller
 
 established that this punishment is disproportionate under the Eighth Amendment."
 

 Id.
 

 at ----,
 
 136 S.Ct. at 735
 
 ,
 
 193 L.Ed.2d at 621
 
 . The Court's justification for not imposing a formal factfinding requirement is derived from the notion that, "[w]hen a new substantive rule of constitutional law is established, [the United States Supreme Court] is careful to limit the scope of any attendant procedural requirement to avoid intruding more than necessary upon the States' sovereign administration of their criminal justice systems."
 
 *520
 

 Id.
 

 at ----,
 
 136 S.Ct. at 735
 
 ,
 
 193 L.Ed.2d at 621
 
 (citation omitted). Despite this reservation, the
 
 Montgomery
 
 decision noted that "
 
 Miller
 
 did bar life without parole ... for all but the rarest juvenile offenders, those whose crimes reflect permanent incorrigibility."
 

 Id.
 

 at ----,
 
 136 S.Ct. at 734
 
 ,
 
 193 L.Ed.2d at 620
 
 .
 

 As Justice Sotomayor highlighted in a concurring opinion in
 
 Tatum v. Arizona
 
 , --- U.S. ----,
 
 137 S.Ct. 11
 
 , 12,
 
 196 L.Ed.2d 284
 
 , 285 (2016) (Sotomayor, J., concurring), "the question
 
 Miller
 
 and
 
 Montgomery
 
 require a sentencer to ask [is]: whether the petitioner was among the very 'rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility.' " (citation omitted).
 

 We interpret the United States Supreme Court's decisions to prohibit imposing a sentence of life without the possibility of parole on any juvenile whom a trial court has found is constitutionally ineligible for that sentence, independent of its consideration of the totality of circumstances that might otherwise favor the harshest sentence. A closer look at North Carolina precedent supports this conclusion.
 

 In
 
 State v. James
 
 , the North Carolina Supreme Court upheld the constitutionality of the newly amended N.C. Gen. Stat. § 15A-1340.19B.
 
 James
 
 , --- N.C. at ----,
 
 813 S.E.2d at 207
 
 . The Court relied on principles of statutory construction that direct our courts, when faced between two interpretations of a statute, to construe the statute as constitutional.
 
 See
 

 id.
 

 at ----,
 
 813 S.E.2d at 203
 
 ("Where a statute is susceptible of two interpretations, one of which is constitutional and the other not, the courts will adopt the former and reject the latter." (internal quotation marks and citations omitted) ).
 
 James
 
 considered whether N.C. Gen. Stat. § 15A-1340.19B creates a presumption of life without parole for juvenile offenders convicted of first-degree murder on a basis other than the felony murder rule,
 
 ibr.US_Case_Law.Schema.Case_Body:v1">1
 

 id.
 
 at ----,
 
 813 S.E.2d at 200
 
 , the argument being that if such a presumption is present, N.C. Gen. Stat. § 15A-1340.19B conflicts with
 
 Miller
 
 .
 

 Id.
 

 at ----,
 
 813 S.E.2d at 207
 
 .
 

 The North Carolina Supreme Court in
 
 James
 
 skeptically viewed the State's argument that a statute including a presumption of life imprisonment without parole for juvenile offenders would pass constitutional muster:
 

 In view of the fact "that a lifetime in prison is a disproportionate sentence for all but the rarest of children, those
 
 *521
 
 whose crimes reflect 'irreparable corruption,' " a statutory sentencing scheme embodying a presumption in favor of a sentence of life imprisonment without the possibility of parole for a juvenile convicted of first-degree murder on the basis of a theory other than the felony murder rule would be, at an absolute minimum, in considerable tension with the General Assembly's expressed intent to adopt a set of statutory provisions that complied with
 
 Miller
 
 and with the expressed intent of the United States Supreme Court that, as a constitutional matter, the imposition of a sentence of life imprisonment without the possibility of parole upon a juvenile be a rare event.
 

 Id.
 

 at ----,
 
 813 S.E.2d at 206-07
 
 (quoting
 
 Montgomery
 
 , --- U.S. at ----,
 
 136 S.Ct. at 726
 
 ,
 
 193 L.Ed.2d at
 
 611 ). This analysis is consistent with that adopted by other state courts.
 
 See, e.g.,
 

 *525
 

 People v. Gutierrez
 
 ,
 
 58 Cal.4th 1354
 
 , 1381, 1387,
 
 171 Cal.Rptr.3d 421
 
 ,
 
 324 P.3d 245
 
 , 264, 267 (2014) (holding that interpreting a sentencing statute as establishing "a presumption in favor of life without parole [for juvenile homicide offenders] raises serious constitutional concerns under the reasoning of
 
 Miller
 
 and the body of precedent upon which
 
 Miller
 
 relied").
 

 The
 
 James
 
 court instead held that N.C. Gen. Stat. § 15A-1340.19B provides trial courts with an even choice between two equal alternative sentencing options-life with parole or life without parole.
 
 James
 
 , --- N.C. at ----,
 
 813 S.E.2d at 204
 
 . In so holding,
 
 James
 
 rejected the notion that a sentencing statute must presume a sentence of life with the possibility of parole for juvenile offenders.
 
 See
 

 id.
 

 at ----,
 
 813 S.E.2d at 207
 
 ("[T]rial judges sentencing juveniles convicted of first-degree murder on the basis of a theory other than the felony murder rule should refrain from presuming the appropriateness of a sentence of life imprisonment without the possibility of parole and select between the available sentencing alternatives based solely upon a consideration of 'the circumstances of the offense,' 'the particular circumstances of the defendant,' and 'any mitigating factors,' as they currently do." (internal citations omitted) ). Because it held that N.C. Gen. Stat. § 15A-1340.19B does not create a presumption in favor of life without parole, the North Carolina Supreme Court did not reach the issue of whether such a presumption would be constitutional under
 
 Miller
 
 and its progeny.
 

 James
 
 also contemplated whether
 
 Miller
 
 requires a trial court to make an explicit finding that the juvenile is " 'irreparably corrupt' or 'permanently incorrigible' before the juvenile can be sentenced to life imprisonment without the possibility of parole."
 

 *522
 

 James
 
 , --- N.C. at ----,
 
 813 S.E.2d at 208
 
 . To this end, the North Carolina Supreme Court, interpreting N.C. Gen. Stat. § 15A-1340.19B
 
 in pari materia
 
 with the other parts of the Juvenile Code,
 
 [2]
 
 explained:
 

 [A] trial judge required to sentence a juvenile convicted of first-degree murder on the basis of a theory other than the felony murder rule must consider "all the circumstances of the offense," "the particular circumstances of the defendant," and the mitigating circumstances enumerated in subsection 15A-1340.19B(c), [N.C. Gen. Stat.] § 15A-1340.19C, and comply with
 
 Miller
 
 's directive that sentences of life imprisonment without the possibility of parole for juveniles convicted of first-degree murder should be the exception, rather than the rule, with the "harshest prison sentence" to be reserved for "the rare juvenile offender whose crime reflects irreparable corruption," rather than "unfortunate yet transient immaturity."
 

 Miller
 
 ,
 
 567 U.S. at 479-80
 
 ,
 
 132 S.Ct. at 2469
 
 ,
 
 183 L.Ed.2d at 424
 
 . In our view, the statutory provisions at issue in this case, when considered in their entirety and construed in light of the constitutional requirements set out in
 
 Miller
 
 and its progeny as set out in more detail above, provide sufficient guidance to allow a sentencing judge to make a proper, non-arbitrary determination of the sentence that should be imposed upon a juvenile convicted of first-degree murder on a basis other than the felony murder rule to satisfy due process requirements.
 

 Id.
 

 at ----,
 
 813 S.E.2d at 208
 
 .
 
 James
 
 further held that the newly amended sentencing statute was sufficient without additional procedural requirements, such as the consideration of aggravating factors:
 

 As a result of the fact that the statutory provisions at issue in th[e] case require consideration of the factors enunciated in
 
 Miller
 
 and its progeny and the fact that
 
 Miller
 
 and its progeny indicate that life without parole sentences for juveniles should be exceedingly rare and reserved for specifically described individuals, we see no basis for concluding that the absence of any requirement that the sentencing authority find the existence of aggravating
 
 *523
 
 circumstances or make any other narrowing findings prior to determining whether to impose a sentence of life without parole upon a juvenile convicted of
 
 *526
 
 first-degree murder on a basis other than the felony murder rule renders the sentencing process enunciated in [N.C. Gen. Stat.] §§ 15A-1340.19A to 15A-1340.19D unconstitutionally arbitrary or vague.
 

 Id.
 

 at ----,
 
 813 S.E.2d at 209
 
 .
 

 Following
 
 Miller
 
 ,
 
 James
 
 , and their progeny, we hold that whether a defendant qualifies as an individual within the class of offenders who are irreparably corrupt is a threshold determination that is necessary before a life sentence without parole may be imposed by the trial court. This holding is not inconsistent with the North Carolina Supreme Court's rejection of a specific factfinding requirement. Rather, we hold that, when a trial court does make a finding about a juvenile offender's possibility of rehabilitation that is inconsistent with the limited class of offenders defined by the United States Supreme Court, a sentence of life in prison without the possibility of parole is unconstitutional as applied to that offender.
 

 In
 
 State v. Sims
 
 , this Court upheld the imposition of a life sentence without parole for a juvenile offender who was not found to have any characteristic inconsistent with constitutional restrictions. --- N.C. App. ----, ----,
 
 818 S.E.2d 401
 
 , ---- (COA17-45) (
 
 2018 WL 3732800
 
 ). The defendant in
 
 Sims
 
 challenged, among other things, the trial court's finding regarding his likelihood of benefiting from rehabilitation in confinement.
 

 Id.
 

 at ----, ---- S.E.2d at ----. This Court concluded, "[w]hile
 
 Miller
 
 states that life without parole would be an uncommon punishment for juvenile offenders,
 
 the trial court has apparently determined that [the] defendant is one of those 'rare juvenile offenders' for whom it is appropriate
 
 ."
 

 Id.
 

 at ----,
 
 818 S.E.2d at 412
 
 (emphasis added) (quoting
 
 Miller
 
 ,
 
 567 U.S. at 479
 
 ,
 
 132 S.Ct. at 2469
 
 ,
 
 183 L.Ed.2d at
 
 424 ). We explained that "[t]he trial court's unchallenged evidentiary findings combined with its ultimate findings regarding the
 
 Miller
 
 factors demonstrate that the trial court's determination was the result of a reasoned decision."
 

 Id.
 

 at ----,
 
 818 S.E.2d at 412
 
 . In essence, the trial court in
 
 Sims
 
 impliedly found that the defendant fell within the class of irreparably corrupt offenders, and did not find any characteristic in the defendant inconsistent with that class of offenders.
 

 Turning to the case at hand, we conclude that the trial court erred by imposing a sentence of life in prison without the possibility of parole
 
 *524
 
 after making a finding contrary to the defined class of irreparably corrupt offenders described in our precedent. Unlike in
 
 Sims
 
 , the trial court here made an explicit finding that "there is no certain prognosis" for Defendant's potential for rehabilitation. This finding directly conflicts with the limitation of life in prison without parole to juvenile offenders who are "irreparably corrupt" and "permanently incorrigible." As Judge Stroud, concurring in
 
 Sims
 

 ,
 
 explained: " 'Permanent' means forever. 'Irreparable' means beyond improvement. In other words, the trial court should be satisfied that in 25 years, in 35 years, in 55 years-when the defendant may be in his seventies or eighties-he will likely still remain incorrigible or corrupt, just as he was as a teenager, so that even then parole is not appropriate."
 
 Sims
 
 , --- N.C. App. at ----,
 
 818 S.E.2d at 418
 
 (Stroud, J., concurring). Because the trial court made an explicit finding contrary to a determination that Defendant is one of those rarest of juvenile offenders for whom rehabilitation is impossible and a worthless endeavor, we hold the trial court erred by imposing a life sentence without the possibility of parole.
 

 III. Conclusion
 

 For the foregoing reasons, we vacate the trial court's judgment and remand for Defendant to be resentenced to two consecutive terms of life imprisonment with the possibility of parole.
 

 VACATED AND REMANDED.
 

 Chief Judge McGEE and Judge STROUD concur.
 

 Section 15A-1340.19B mandates that juveniles found guilty of first-degree murder on the sole basis of the felony murder rule are to be sentenced to life in prison with the possibility of parole. N.C. Gen. Stat. § 15A-1340.19B(a)(1) (2015).
 

 [2]
 

 Other Juvenile Code provisions the Supreme Court cited included N.C. Gen. Stat. §§ 15A-1340.19A through 15A-1340.19D, which set forth the scheme designed for sentencing juveniles convicted of first-degree murder.
 
 James
 
 , --- N.C. at ----,
 
 813 S.E.2d at 198
 
 .